Good morning, Your Honors, and may it please the Court. Today, we are asking that this Court find that ineffective assistance of counsel in certain instances, when it interferes with the availability of administrative review, can satisfy all three prongs of 1326d. The crux of the issue before the Court today, I believe, is whether ineffective assistance of counsel can render administrative and then judicial review unavailable under Ross v. Blake. So could I stop you there? What limiting principle would there be? I've been thinking with my clerk all week about different hypotheticals, different kinds of IAC. What would we look for? Well, I think the limiting principle is in 1326d itself. In order to establish that a removal order was fundamentally unfair, you have to show prejudice. So I think prejudice is a limiting component here. Okay, that could be. But what about our case on Portillo-Gonzalez, when we talked about the type of error, we expanded there about what kinds of errors Ross was really talking about? Yeah, so I think, I mean, it's hard in the abstract, I think, to come up with a limiting principle. I think the issue here is that when we have, I mean, looking at this Court's recent opinion in Valdivia Soto, we can see that errors relating to counsel, specifically, can give rise to situations where 1326d, all three prongs are satisfied. And I think... Was Valdivia's a counsel error? I thought it was an I.G. error. An I.G. error relating to the availability of counsel. So I'm kind of grouping them together because I think... But can I stop you right there? Of course. Because I think Judge Sung's going right to it for me. Why do we group those together? Isn't an error made by somebody sitting on the bench qualitatively different than IAC? Yes, yes. I think it's helpful to look at them in the same sort of category, though, because they're both dealing with the same right, having counsel, and effective, competent counsel. And if we look at Valdivia Soto, where the I.J.'s error on that part, failing to fully apprise a non-citizen of their right to counsel, if that was significant enough of an error to lead to satisfaction of these three prongs, then I think it almost necessarily follows that when you have incompetent counsel, ineffective counsel, you've gone far past getting advice about it. You've gotten counsel. And their error, when it rises to a certain level that causes prejudice, I think can satisfy all three of these prongs. I don't know if I've answered your question. And then categorically, any ineffective assistance of counsel that rises to the level, I mean, in the immigration context, essentially the standard itself for ineffective assistance of counsel incorporates, I believe, prejudice prong and has to be quite serious. So it would have to meet that standard. But if it met that standard, I think what you're saying is all ineffective assistance of counsel in the immigration context would then essentially be the equivalent of the type of I.J. error that made the administrative remedy unavailable. If I understand the court correctly, yes. I think that's my point. Any I.A.C.? As long as there is prejudice, as long as they can prove prejudice, which is not a given. So let me just, if that's your answer, then what about this description we had in Portillo-Gonzalez? What do you do with that? Because that doesn't say any error. That's talking about a really specific kind of error. If you could pinpoint a little bit more accurately. Could I change my mind? Yes, thank you. So it's talking about the type of mistake. It's a misrepresentation about the availability of a procedure. In other words, if there was a merits ruling, if your lawyer was wrong about this qualifies as a CIMT and that one doesn't qualify as a CIMT, that's the kind of thing that gets washed out or corrected by exhausting, by D1. Yes. Right? Quite different than somebody telling you, you can't appeal this issue or you can't, which goes back to Ross's fact pattern in a PLRA context where they've got a procedure on the books, but they're not making the form available to access it, or they're intentionally stymieing the person trying to access it. It seems to be qualitatively different. Yes. I think where we can differentiate Mr. Flores-Bustos' case here is that, so this court has made clear in Lynn v. Ashcroft that although there's no right to have appointed counsel, when you get counsel, you're entitled to competent counsel. When your counsel, like we have in Mr. Flores-Bustos' cases, is so clearly ineffective, when they are not staying abreast of major changes in their main practice area of immigration law, and they fail to discuss a clear error on the part of the IJ, I think you've reached that level where they have become so wholly ineffective that just like in Ross, it's now been misrepresented to you about your availability of relief. You should be entitled, when you retain an attorney, to rely on them to give you competent advice. So for the facts in this case, can you do the D-1 analysis for me? What's your strongest argument for satisfying? I appreciate you're not trying to excuse. What's the strongest argument that the facts here satisfy D-1? Well, so I think Mr. Flores-Bustos' case is unique because he appealed. He appealed the IJ's error on two issues, on cancellation of removal and voluntary departure. So I think very clearly we demonstrated here that he was interested in doing whatever he could possible to stay in this country, seeking avenues for relief. And those are discretionary decisions by the IJ. And if his attorney discussed that with him and he decided to take the sort of difficult task of appealing a discretionary determination, I think it stands to reason that if he had been counseled on this glaring error by the IJ, he would have pursued that as well. And so the failure of his attorney to bring that to his attention, and this court has talked many times about the substantive complexity of an issue in immigration court doesn't rise to the level necessary. I'm not saying that it does for a non-attorney, a layperson. But for an attorney to fail to recognize such a glaring error and then fail to discuss that with his counsel, I think has put us in a similar position to Ross, where there has been maybe not an intentional, but certainly a blatant misrepresentation of the law. If we agree with you, would we be in a position where we're adopting one rule for the satisfaction of 1326 D. 1 through 3 for people who are represented and a different standard for people who are not? I had a feeling this question was coming, Your Honor. I think unfortunately, the answer at this point would perhaps be yes. I think, you know, obviously, there's there's separate case law about knowing an intelligent waiver of the right to counsel. But I think if you make that choice to retain an attorney based on the current case law in this district, in this circuit, there appear to be different rights. You have, it's clear, a right to competent counsel. I think, you know, opinions may differ, but it's it's hard for a lay person to advocate for themselves in any court, let alone immigration court that is so complex. And so looking at this court's case law, I think right now the answer to that question has to be yes. When looking at Valdivia Soto and Lynn versus Ashcroft and the other cases dealing with the responsibilities of immigration counsel once retained. Judge Sung, do you have more questions? Not at the moment. Do you want to reserve the rest of your time? Yes, thank you. Okay. We've covered, you know, many of the points I was hoping to get to. But I think it's important to note that the error that occurred here by Mr. Flores-Bustos' immigration counsel, how glaring it was. It came after Nijhuan v. Holder, where the Supreme Court said pretty clearly the modified categorical approach is only to be applied to divisible statutes. And the immigration judge pretty clearly says it's indivisible and I'm going to apply it anyway. And he should have been aware of that. We discussed that he certainly wanted to appeal Mr. Flores-Bustos because he did. And I think the only logical conclusion is that he would have sought any relief possible. But because of that blatant misrepresentation, the failure to discuss that appeal issue with his client, that avenue of relief was foreclosed to him. And then that rendered the judicial relief also unavailable. I think looking at this Court's opinion in Lopez Chavez, the similarities are striking to Mr. Flores-Bustos and to Mr. Lopez Chavez. And in that case, in Lopez Chavez, the Court was easily able to conclude that that was ineffective assistance, that he was prevented from reasonably presenting his case due to his immigration attorney's failure to stay abreast of changes in the law. So I think this Court is in a position where it can, on facts in the record, make a determination that Mr. Flores-Bustos' immigration counsel was blatantly ineffective for failing to not even discuss that issue with Mr. Flores-Bustos. And then looking at this Court's opinion in Valdivia Soto, we can see that these types of errors, when they relate to the availability of counsel, can satisfy all three prongs of 1326d. Counsel, did you want to reserve some time? No, Your Honor, I did not. Oh, I thought you said you do want to reserve time. Oh, no, I was not planning on a rebuttal. I apologize. You can go right ahead. No, and so in terms of Valdivia Soto, like I mentioned, I think the error we have here is more significant. Can you explain why? If the immigration judge's mere failure to properly apprise a non-citizen of the right to counsel, which is important, but if that can satisfy all three prongs of 1326d, then I think when a non-citizen makes the decision to retain counsel, and that counsel is, I think, pretty clearly wildly ineffective, if that doesn't rise to the level of just a mere failure to understand your rights, I think, you know, we're in an awkward position where you can make a decision to retain counsel and then, through no fault of your own, have incompetent counsel. So I request the same amount of time, but the Court find that all three prongs of 1326d can be satisfied by this type of error. Don't go away yet. Do you have additional questions, either one of you? No. Thank you. Thank you, Your Honors. Okay. Good morning, Your Honor. Ian Garrix for the United States. If I could just address one of the questions, the first question the Court had for appellant's counsel, any limiting principle that applies in this case, and the government would submit, well, that's Palomar-Santiago, and this Court's, all of this Court's post-Palomar precedent up to a month ago interpreting Palomar-Santiago as mandatory, all three prongs must be satisfied. Satisfaction of one prong, the third prong, often— I don't think that's disputed by opposing counsel, though. His argument is there could be an event or an occurrence that satisfies all three. Why is he wrong about that? He certainly can't excuse them, for sure, but what about something that satisfies all three? That's his argument. That is not the case in this Court. In most recent, well, in Portillo, the, this Court reaffirmed the principle that all three prongs are mandatory. I'm not, I'm not contesting that point. I fully appreciate, and for purposes of this question, that they're mandatory. The question is, couldn't there be a, that's what he's arguing, there could be a circumstance that satisfies all three. And that's where Ross comes up, and the government's position on Ross is that's the defense, or the alien's attempt to parry the Palomar-Santiago's conclusion, because Ross was dealt with the Prison Litigation Reform Act, and there were certain mandatory provisions, yet there's some similar language about that were available, which also is similar in the 1326 D-1 exhaustion. And in that context, in Ross, the aliens, as well as in Portillo, and also in Valdivius, keep raising Ross for this proposition. And the Supreme Court in, in Palomar, this Court in Portillo, was not saying that Ross applied. In fact, in Portillo, the Court said, assuming Ross applies. Well, we have currently a, Valdivius, which says it does apply. Which brings us to Valdivius, and that's currently under review, and it does put the precedent in tension about whether or not one issue can satisfy the other prongs. And that's subject to review, and the government's motion for any rehearing is due next month. And the government believes, as the, as Appellant's Counsel noted, even though that Valdivius deals with the misadvisal of right to counsel at immigration proceeding, this issue here deals with ineffective assistance of immigration counsel. It's relevant, but not the same. And particularly, as the, the government filed its 28J letter yesterday, in which the Court, the District Court, specifically noted the First Circuit, and if the Court were to hold otherwise an extent of Valdivius, it would create this circuit conflict. Because D1 provides that they must exhaust, and there is a provision in, in immigration courts for an, an alien to exhaust the claim of ineffective assistance of counsel. And that's exactly what the Supreme Court is expecting of petitioners in the prison litigation context, and the immigration context that it has done in the First Circuit. They have, the First Circuit has held, and the District Court here, that Palomar precludes that because they haven't exhausted. And this Court has essentially held that that Palomar, Portillo, and even in Valdivius, that did away with Gonzalez v. Lobos, which supports Appellant's argument about the Lopez-Chavez, which is a decision of Judge Reinhart, extending that, saying that one prong can satisfy the two. And that's exactly what the Court, the two-judge panel in Valdivius does, saying it can satisfy all three, whereas Judge Acuda says, no, in the dissent, that you can't do that. You have to administratively exhaust. And here, in this particular context, this is distinct because there was a remedy that was available, and Appellant has never shown or asserted that. There is some mention in the record about him maybe having filed a motion to reopen, but there's no assertion that it was deemed ineffective by the BIA, or then the judicial of judicial review, which means if the BIA said, no, there was no ineffective assistance on this claim, he would be required under D-2 to take that claim up to this Court. And he hasn't done either of those. So under all these precedents, including that case of Castillo-Martinez out of the First Circuit, it's clear that he hasn't exhausted his administrative remedies to challenge any effective and effective assistance of counsel. And the Supreme Court said that Judge Christian referred to whether or not it deals with substance or procedure, does it matter? And the Supreme Court in Palomar rejected the argument that because non-citizens won't recognize the substantive basis for the appeal, that they should be excused from pursuing it. So the Supreme Court, and as Judge Ikuda notes in her dissent in Valdivia's, they still have an option to pursue that appeal independent of counsel. And in this context, he could have administratively challenged and filed a motion to reopen. He was deported or ordered deported in approximately 2010. Ten years passed, he's charged in 2020. Well, what's he doing in all this time? He's not seeking to have this ineffective. If he really wanted to be in the United States lawfully after he'd been deported, he only raises that argument once he gets prosecuted. And that's why the Congress enacted 1326D, because they have to exhaust those remedies. So the government's position... So I don't think I've heard an answer to the question, but I'm going to ask it again, because I think it might differ. And I don't know if it is going to change anything in this particular case, but my question wasn't intended to be a trick question. Does it matter what kind of mistake is made? It seems to me if it's a merits ruling, then the authorities you were just citing talk about the importance of seeking review, because that's where merits rulings are going to get ironed out, right? As opposed to a D1 mistake. And I haven't heard you answer the question about whether it would be possible for something to occur that could satisfy D1 through D3. You know, one occurrence that satisfies all three. Is it your position categorically that could not happen? Was that that is foreclosed by Palomar Santiago? Or what is your position exactly? The government believes it's that each is independent. Yes. And mandatory. Yes. There may be circumstances, but in reviewing the facts of this case, I don't think we have to hypothesize of whether or not there are circumstances out there that may satisfy, because he didn't exhaust. Okay. And what is your position on whether we should wait for the outcome of the Valdivia Soto's case? Well, as I stated earlier, the government believes that puts the circuit's post-Palomar precedent in a bit of tension. And it's not final. The mandate hasn't issued. It may be prudent for the court to wait to see what happens in Valdivia and then reconcile that and either determine whether Valdivia supplies. And even if Valdivia stays the law of the land, or maybe it goes en banc and Judge Ukuda's decision becomes the law of the land, and then we wouldn't be here. But if it remains, the government would submit as your honor reference. It's not on point with this particular case because that dealt with the immigration court's misadvice or mistranslation of the right to appeal. Whereas here, and as Judge Ukuda pointed out in her dissent, the aliens keep relying on Ross about the prison, the PLRA. And as Judge Ukuda points out in her dissent, there was no thwarting of the administrative process by a state actor, so to speak. And I think it was already addressed with appellant's counsel. You don't have a state actor, the government, as in the PLRA Ross context, where you have prison officials that are thwarting or not. They're just receiving appeals, tossing them, not dealing with them. And that's a different standard. So the government believes that Valdivia is not on point, whereas the first area's decision in Castillo-Martinez does appear to be more in point to the fact that he didn't exhaust those administrative remedies to challenge ineffective assistance. I did have a question on just going back to first principles for a second because 1326 was enacted after the Supreme Court decided U.S. versus Mendoza-Lopez. And so, and I think Mendoza-Lopez stands for the proposition that there is sort of a due process, constitutional due process requirement that the initial deportation proceedings can't be so violative of the aliens' rights. If it is, then you just can't base a criminal conviction on that prior deportation proceeding. So is there, would you at least concede that if enforcement of the exhaustion requirement meant that you would be allowing a criminal conviction on a deportation proceeding that was so violative of due process that that would, we'd have to go I'm not saying that this case meets that standard, but there is a circumstance. I understand, and there's discussion in the case law about 1326D being in response to Mendoza-Lopez. But I think the standard is that when you look at Ross, when the Supreme Court decides that, basically Ross says the courts, and it was dealing with a particular circuit that kept creating extra statutory exceptions, just like this circuit with regard to 1326D, and the Supreme Court had to look exactly at the statute. But it did parry the argument about the PLRA mentioning the definition of what may be available in that context. But to the point here is that there was an administrative remedy. It was not used. It could have been available. It's not shown that it wasn't available. And in addition, even under Valdivia Soto, it certainly wasn't made available based on the government's conduct here. So therefore, it's not violative so much as the due process and the prejudice issues that were under prior precedent that it would warrant reversal here. But if a, putting aside the facts here for the moment, if a constitutional due process violation caused the failure to exhaust, would we still be able to enforce that statutory exhaustion requirement, notwithstanding Mendoza-Lopez? I think that would rest on this decisions if Valdivia Soto stands in this application of Ross and what the definition of what is available, and then strictly looking, like Judge Yakuda says in her sentence, what does that mean? What is available? And there were three prongs in there, and one of them was thwarting that. So there could be context, for example, in the PLRA where that could happen hypothetically, but that's certainly not. Part of the problem with the PLRA is that prisoners are not normally represented by counsel when they're going through the prison administrative process. So it's not easy to find an analogous case dealing with counsel representation in the PLRA context. So that's part of the difficulty, I think, of figuring out what to do in this case when it's about effective assistance of counsel, but I understand your argument. Thank you. Anything further, Judge Yakuda? We've taken you well over your time, but we appreciate your argument from both counsel very much. It's very helpful. We will take this case under advisement and move on to the next case on the calendar, which is United States...
judges: CHRISTEN, SUNG, Rakoff